# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

### PORTLAND DIVISION

| | |
|---|---|
| **SHARRON SELMAN; JOAN TOPE** and **MICHAEL TOPE**, wife and husband; and **LINDA A. NARZ**, | Case No.: 11-cv-1400-HU |
| Plaintiffs, | |
| v. | **OPINION AND ORDER** |
| **PFIZER, INC.; WYETH**, dba **WYETH LLC**; **WYETH PHARMACEUTICALS INC.; WOMEN'S HEALTHCARE ASSOCIATES, LLC**, an Oregon corporation, dba **WOMEN'S HEALTH CARE ASSOCIATES; MILES SEELEY, MD; COLUMBIA VIEW FAMILY HEALTH CENTER**, an Oregon corporation; **DOUGLAS L. EUBANKS, DO; HARPREET DAISY DHILLON, DO; VALLEY VIEW MEDICAL CLINIC, PC**, an Oregon corporation; **PAULA J. SPENCER, DO**; and **STEVEN LISOOK, DO**, | |
| Defendants. | |

Michael L. Williams
Leslie W. O'Leary
WILLIAMS LOVE O'LEARY & POWERS, P.C.
9755 S.W. Barnes Road, Suite 450
Portland, OR  97225-6681

     Of Attorneys for Plaintiffs

Margaret A. Hoffman
Andrew J. Lee
Rebecca A. Lindemann
SCHWABE, WILLIAMSON & WYATT, P.C.
Pacwest Center, Suites 1600-1900
1211 S.W. Fifth Avenue
Portland, OR  97204-3795

William Hoffman
KAYE SCHOLER LLP
The McPherson Building
901 Fifteenth Street, N.W.
Washington, DC  20005

Andrew K. Solow
KAYE SCHOLER LLP
425 Park Avenue
New York, NY  10022

      Of Attorneys for Defendants Wyeth LLC f/k/a Wyeth,
      Wyeth Pharmaceuticals Inc., and Pfizer Inc.

John E. Hart
Lynetta M. St. Clair
HOFFMAN, HART & WAGNER, LLP
1000 S.W. Broadway, Twentieth Floor
Portland, OR  97205

      Of Attorneys for Defendants Women's Healthcare Associates, LLC ,
      Miles Seeley, M.D., Valley View Medical Clinic, P.C.,
      Paula J. Spenser, D.O., and Steven Lisook, D.O.

James L. Dumas
Jeffrey Sherwin Young
Katie M. Eichner
LINDSAY HART NEIL & WEIGLER LLP
1300 S.W. Fifth Avenue, Suite 3400
Portland, OR  97201

      Of Attorneys for Columbia View Family Health Center,
      Douglas L. Eubanks, D.O., and Harpreet Daisy Dhillon, D.O.

**SIMON, District Judge**,

Plaintiffs Sharron Selman, Joan Tope, and Linda Narz ("Plaintiffs") allege that they developed breast cancer after using hormone replacement therapy drugs manufactured by Defendants Pfizer, Inc., Wyeth, and Wyeth Pharmaceuticals Inc. (collectively, the "Pharmaceutical Defendants" or the "Non-Resident Defendants"). Against the Pharmaceutical Defendants, Plaintiffs assert claims of negligence and strict liability. Plaintiffs also name as additional Defendants their individual medical providers, against whom Plaintiffs assert claims of professional negligence.[1]  For purposes of diversity jurisdiction under 28 U.S.C. § 1332, all Plaintiffs are Oregon citizens, the Pharmaceutical Defendants (or Non-Resident Defendants) are all citizens of States other than Oregon, and the Medical Provider Defendants (or Resident Defendants) are all Oregon citizens.

On February 23, 2010, Plaintiffs filed their lawsuit against the Pharmaceutical Defendants and the Medical Provider Defendants in the Multnomah County Circuit Court for the State of Oregon.  Although the state court declined to sever this lawsuit, the state court ordered that separate trials be held on the claims of Selman, Joan and Michael Tope, and Narz. The state court scheduled Selman's claims to be tried first, beginning on January 25, 2012. Selman

---

[1] Plaintiff Sharron Selman asserts claims of professional negligence against Defendants Women's Healthcare Associates, LLC and Miles Seeley, M.D. (collectively, "Selman's Medical Providers"). Plaintiff Joan Tope asserts claims of professional negligence against Defendants Columbia View Family Health Center, Douglas L. Eubanks, D.O., and Harpreet Daisy Dhillon, D.O. (collectively, "Tope's Medical Providers"). Plaintiff Joan Tope's husband, Plaintiff Michael Tope, alleges a derivative claim for loss of consortium that is entirely dependent upon the claims of Plaintiff Joan Tope. Plaintiff Linda Narz asserts claims of professional negligence against Defendants Valley View Medical Clinic, P.C., Paula J. Spencer, D.O., and Steven Lisook, D.O.  (collectively, "Narz's Medical Providers"). Selman's Medical Providers, Tope's Medical Providers, and Narz's Medical Providers are collectively referred to as the "Medical Provider Defendants" or the "Resident Defendants."

recently settled her claims with the Selman Medical Providers and gave notice of that settlement to the Pharmaceutical Defendants.

Shortly thereafter, on November 21, 2011, the Pharmaceutical Defendants removed this action from state court to federal court, pursuant to 28 U.S.C. §§ 1441 and 1446.[2]  The Pharmaceutical Defendants argue that Selman's recent settlement with and dismissal of the Selman Medical Providers so close to Selman's scheduled trial date (and well beyond twelve months after Plaintiffs commenced this lawsuit), along with other evidence, shows that all of the Resident Defendants were fraudulently joined, that Plaintiffs have improperly manipulated forum selection in this case, and that this court may exercise diversity jurisdiction over the case pursuant to 28 U.S.C. §§ 1332 and 1441 by disregarding the citizenship of the "fraudulently joined" Resident Defendants. Plaintiffs have filed an emergency motion to remand the case back to the Multnomah County Circuit Court, pursuant to 28 U.S.C. § 1447.

Because Plaintiffs have stated viable state-law causes of action against the Resident Defendants, I conclude that the Resident Defendants were not fraudulently joined. I also conclude that, with regard to the remaining Resident Defendants and Pharmaceutical Defendants, there was no egregious or fraudulent misjoinder, based upon the similarity of the claims and the factual allegations alleged by Plaintiffs against each Defendant. I also conclude that there are insufficient grounds to delay ruling on Plaintiffs' motion to remand in order to allow the Pharmaceutical Defendants to take discovery in this court in aid of their jurisdictional argument. Because the remaining Resident Defendants are citizens of Oregon, there is not complete diversity of citizenship. Thus, this court lacks subject matter jurisdiction under 28 U.S.C. § 1332, and Plaintiffs' emergency motion to remand (Dkt. #5) is GRANTED.

---

[2] As more fully explained below, this was the second time that the Pharmaceutical Defendants removed this action to federal court.

# I.    BACKGROUND

The Pharmaceutical Defendants first removed this case to federal court on April 9, 2010. Under the rules governing multi-district litigation ("MDL"), this case was transferred to the Eastern District of Arkansas, which is serving as the MDL court for the hormone replacement therapy products liability litigation.  Plaintiffs then moved the MDL court to remand this lawsuit.

On July 20, 2010, the MDL court granted Plaintiffs' motion to remand. *In re: Prempro Products Liability Litigation*, MDL No. 4:03-cv-1507 (W.D. Ark. July 20, 2010). In so ruling, the MDL court rejected the argument presented by the Pharmaceutical Defendants that the Resident Defendants had been fraudulently joined.  The MDL court concluded instead that Plaintiffs had adequately pleaded plausible causes of action against the Resident Defendants. The MDL court also rejected the argument by the Pharmaceutical Defendants that Selman did not intend to pursue her claims against the Selman Medical Providers, although the MDL court did not explain why or how such intent would be legally relevant to an analysis of fraudulent joinder. The MDL court also declined to sever the parties under 28 U.S.C. § 1407(a), as requested by the Pharmaceutical Defendants.

This case has been litigated before the Multnomah County Circuit Court for more than a year, through numerous discovery, evidentiary, and other motions. Among other rulings, the state court denied a motion to sever and, instead, scheduled three separate trials for the three sets of Plaintiffs. The state court scheduled Selman's trial to begin on January 25, 2012, with the Tope and Narz trials to begin later in 2012.

On or about November 10, 2011, Plaintiffs' counsel informed the state court and the remaining Defendants that Selman had recently settled with the Selman Medical Providers. On November 21, 2011, the Pharmaceutical Defendants removed the case to federal court for the

second time, arguing that Selman's settlement with her medical providers so close to trial, along with other evidence previously presented to the MDL court, shows that Selman never intended to pursue her claims against those particular Resident Defendants. This lack of intent, according to the Pharmaceutical Defendants, establishes that Plaintiffs fraudulently joined not only the Selman Medical Providers but all of the other Resident Defendants (or Medical Provider Defendants). The Pharmaceutical Defendants argue that this evidence shows that all of the other Resident Defendants were fraudulently joined to defeat diversity jurisdiction. Because fraudulently joined defendants do not defeat diversity, *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1043 (9th Cir. 2009), the Pharmaceutical Defendants argue that complete diversity exists and that this court has subject matter jurisdiction sufficient to support removal. The Pharmaceutical Defendants also argue that their removal petition is not untimely under 28 U.S.C. § 1446(b).

Plaintiffs timely moved for remand under 28 U.S.C. 1447. Plaintiffs argue that the Pharmaceutical Defendants' removal was untimely; that the Pharmaceutical Defendants are impermissibly seeking review of the MDL court's remand decision; that there is no federal subject matter jurisdiction because nondiverse defendants still remain in the case; that there is no evidence that Plaintiffs acted in bad faith to avoid federal jurisdiction; and that significant progress has already been made in this case before the state court such that removal now would result in a waste of judicial resources.

## II.    STANDARDS

A civil action may be removed from state court to federal court if the federal district court would have had original jurisdiction over it. 28 U.S.C. § 1441(a). Federal jurisdiction exists over all civil actions between citizens of different States where the amount in controversy exceeds

$75,000. 28 U.S.C. § 1332(a). For diversity jurisdiction to apply, however, there must be complete diversity among the parties, and, as a general rule, if one or more plaintiffs are citizens of the same State as one or more defendants, federal diversity jurisdiction will be lacking. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).

One exception "to the requirement of complete diversity is where a nondiverse defendant has been 'fraudulently joined.'"[3] *Morris v. Princess Cruises, Inc.*, 236 F.3d 1061, 1067 (9th Cir. 2001). In that event, "the district court may ignore the presence of that defendant for the purpose of establishing diversity." *Hunter*, 582 F.3d at 1043. There is, however, a "general presumption against fraudulent joinder." *Hamilton Materials, Inc. v. Dow Chemical Corp.*, 494 F.3d 1203, 1206 (9th Cir. 2007). Further, Defendants bear a "heavy burden" of demonstrating fraudulent joinder by "clear and convincing evidence." *Id.* (clear and convincing evidence is required to establish fraudulent joinder); *Knutson v. Allis-Chalmers Corp.*, 358 F. Supp. 2d 983, 995 (D. Nev. 2005) (a defendant asserting fraudulent joinder bears a "heavy burden").

A motion to remand is the proper procedure for challenging removal. 28 U.S.C. § 1447. *Moore-Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009). The removal statute is strictly construed, and the court resolves any doubt in favor of remand. *Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009); *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992) (per curiam). There is a "strong presumption" against removal jurisdiction. *Hunter*, 582 F.3d at 1042. Further, the party seeking removal bears the burden of

---

[3] As courts and commentators have often pointed out, the phrase "fraudulent joinder" is a "bit misleading because the doctrine requires neither a showing of fraud nor joinder in one sense." 16 *Moore's Federal Practice*, § 107.14[2][c][iv][A], at 107-58 (Matthew Bender 3d ed. 2011). "Fraudulent joinder does not impugn the integrity of Plaintiffs or their counsel and does not refer to an intent to deceive." *Dacosta v. Novartis AG*, 180 F. Supp. 2d 1178, 1181 (D. Or. 2001).

Case 3:11-cv-01400-HU    Document 32    Filed 12/16/11    Page 8 of 27


establishing that removal is proper. *Moore-Thomas*, 553 F.3d at 1244. The Pharmaceutical

Defendants must, therefore, overcome "both the strong presumption against removal jurisdiction

and the general presumption against fraudulent joinder." *Hunter*, 582 F.3d at 1046 (internal

quotation marks and citation omitted).

### III.    DISCUSSION

### A.    Section 1446(b) and the Timeliness of Removal

In their motion to remand, Plaintiffs first argue that the Pharmaceutical Defendants'

second notice of removal was time-barred. Whether the second removal is timely requires an

interpretation of 28 U.S.C. § 1446(b), which provides in full:

> The notice of removal of a civil action or proceeding shall be filed within thirty
> days after the receipt by the defendant, through service or otherwise, of a copy of
> the initial pleading setting forth the claim for relief upon which such action or
> proceeding is based, or within thirty days after the service of summons upon the
> defendant if such initial pleading has then been filed in court and is not required
> to be served on the defendant, whichever period is shorter.

> If the case stated by the initial pleading is not removable, a notice of removal may
> be filed within thirty days after receipt by the defendant, through service or
> otherwise, of a copy of an amended pleading, motion, order or other paper from
> which it may first be ascertained that the case is one which is or has become
> removable, except that a case may not be removed on the basis of jurisdiction
> conferred by section 1332 of this title [jurisdiction based on the diversity of
> citizenship] more than 1 year after commencement of the action.

Because Plaintiffs filed their complaint in state court on February 23, 2010, and the

current, or second, notice of removal was filed on November 21, 2011, the parties have focused

on whether the one-year time limit set forth in the second paragraph of § 1446(b) bars removal at

this time. The Pharmaceutical Defendants rely on *Tedford v. Warner-Lambert Co.*, 327 F.3d 423

(5th Cir. 2003), in which the Fifth Circuit equitably tolled § 1446(b)'s one-year time limit based

on objective evidence that the plaintiff had purposefully delayed dismissal of a nondiverse

defendant in order to prevent the remaining diverse defendants from removing the case to federal

court. *See id.* at 427-28. The Ninth Circuit, however, has yet to adopt such an equitable exception to § 1446(b)'s one-year time limit.[4] *See Ritchey v. Upjohn Drug Co.*, 139 F.3d 1313, 1317-18 (9th Cir. 1998); *see also, e.g.*, *Burkholder v. Asbestos Claims Mgmt. Corp.*, No. 07-cv-781, 2007 WL 2463307, at *4 (D. Or. Aug. 28, 2007).

The Ninth Circuit has held that the one-year time limit applies only to cases falling under § 1446(b)'s second paragraph and not to cases coming within the first paragraph. *See Ritchey*, 139 F.3d at 1316; *accord Carter v. Frito-Lay, Inc.*, 144 F. App'x 815 (11th Cir. 2005) (per curiam); *Brown v. Tokio Marine & Fire Ins. Co.*, 284 F.3d 871 (8th Cir. 2002); *Johnson v. Heublein Inc.*, 227 F.3d 236 (5th Cir. 2000); *Brierly v. Alusuisse Flexible Packaging, Inc.*, 184 F.3d 527 (6th Cir. 1999). Under the Ninth Circuit's reading of § 1446(b), cases that are removable at the commencement of a lawsuit are analyzed under the first paragraph of § 1446(b) and are not affected by the one-year time limit set forth in the second paragraph. Only cases that are not removable based on the initial pleading fall under the time limit stated in the second paragraph, and such cases may be removed within thirty days after a defendant's receipt of an additional filing or other paper that first indicates the case is removable, unless more than one year has passed since the action was commenced.[5]

Removal based on allegations of fraudulent joinder, *Ritchey* suggests, should be analyzed under the first paragraph of § 1446(b) because the removing defendant is effectively arguing that

---

[4] Congress has now codified the Fifth Circuit's approach in its recent amendment to § 1446, which allows an exception to the one-year bar when "the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." Federal Courts Jurisdiction and Venue Clarification Act, Pub. L. No. 112-63, § 103 (2011). This amendment, however, to § 1446 does not apply to cases filed before January 6, 2012. *Id.* § 105.

[5] Congress's recent amendment to § 1446 separates the two paragraphs of § 1446(b) into distinct subsections, thereby clarifying that the one-year time limit indeed applies only to cases that are not removable based on their initial pleadings. *See* Pub. L. No. 112-63, § 103.

– but for the fraudulent joinder – there would have been complete diversity at the time the complaint was originally filed. *See Ritchey*, 139 F.3d at 318. Thus in *Ritchey*, where the Ninth Circuit agreed there was fraudulent joinder, the court held that the diverse defendant could remove the case within thirty days of being served, even though the plaintiff had waited for more than a year to effect service on that defendant. *Id.* at 1315, 1320. Because fraudulent joinder will typically be apparent on the face of the complaint, in most cases a defendant should be able to ascertain any fraudulent joinder issue within thirty days following service. What *Ritchey* and similar cases in other circuits have left unresolved is the situation of a diverse defendant who is not able to ascertain that a nondiverse defendant was fraudulently joined until more than one year after the case was commenced *and* more than thirty days after the diverse defendant was initially served.[6] This is the situation in which the Pharmaceutical Defendants argue they now find themselves.

The Pharmaceutical Defendants' most recent notice of removal appears to be untimely. Ninth Circuit precedent suggests that their claim of fraudulent joinder should be time-barred by the thirty-day limit set forth in § 1446(b)'s first paragraph. In addition, even if the one-year time limit contained in the second paragraph were to apply *and* even if the Ninth Circuit would

---

[6] In *Jernigan v. Ashland Oil Inc.*, 989 F.2d 812 (5th Cir. 1993), the diverse defendant removed the case more than thirty days after it had been served, arguing that it only learned the facts indicating fraudulent joinder from another defendant's answer to the complaint. *Id.* at 813-14. The Fifth Circuit explicitly analyzed the timeliness of the removal under the second paragraph of § 1446(b) and concluded that the diverse defendant had thirty days from the filing of the answer to remove the case. *Id.* at 815. This appears to contradict, in part, the Fifth Circuit's later analysis in *Johnson*, where it applied the first paragraph of § 1441(b) in evaluating the timeliness of a removal based on fraudulent joinder. *Johnson*, 227 F.3d at 240-41. In *Johnson*, the court avoided the thirty-day time limit of § 1446(b)'s first paragraph by applying the judicially-created "revival exception," concluding that the plaintiffs had so substantially amended their complaint that they had effectively reset the thirty-day window. *Id.* at 241-42.

recognize a *Tedford*-type equitable exception to that one-year time limit, there is no objective evidence of collusion between Plaintiffs and the Resident Defendants, there is no backdating of papers or other obfuscation of the dismissal of nondiverse parties, and there is no evidence of any other purposefully dilatory and manipulative tactics. *See Tedford*, 327 F.3d at 427-28.

All that the Pharmaceutical Defendants can point to is Plaintiff's recent settlement with two out of eight Resident Defendants after sixteen months of active litigation in state court, approximately two months before trial. The suggestion by the Pharmaceutical Defendants that the two dismissed Resident Defendants (the Selman Medical Providers) colluded with Plaintiffs in order to keep the case in state court is not only speculative, it is also belied by the fact that one of the recently-dismissed Resident Defendants appears to have previously assisted the Pharmaceutical Defendants in their first effort to remove this case to federal court by submitting a declaration, which the MDL court held insufficiently demonstrated fraudulent joinder.

In the final analysis, however, there is no need to resolve the open questions of law in the Ninth Circuit that would need to be answered before a decision on the timeliness of the Pharmaceutical Defendants' second removal petition could be determined. The answers to those questions can await another day. Because the Pharmaceutical Defendants have failed to show either fraudulent joinder or egregious misjoinder, as more fully discussed below, this action must be remanded to the state court, and the question of whether the second removal was timely need not be decided.[7]

_____

[7] The Ninth Circuit also has not addressed whether § 1446(b)'s one-year limit is procedural or jurisdictional. In *Jackson v. Wal-Mart Stores, Inc.*, 588 F. Supp. 2d 1085 (N.D. Cal. 2008), a Ninth Circuit district court relied in part on authority from the Third and Fifth Circuits to conclude that "failure to meet the one-year deadline is a procedural rather than a jurisdictional defect." *Id.* at 1086-87.

**B.    Fraudulent Joinder**

*1.    Fraudulent Joinder Under the Ninth Circuit's Test*

Under Ninth Circuit precedent, joinder is fraudulent if the plaintiff "fails to state a cause of action against a resident defendant, and the failure is obvious according to the settled rules of the state[.]"[8] *McCabe v. General Foods Corp.*, 811 F.2d 1336, 1339 (9th Cir. 1987); *see also* 16 *Moore's Federal Practice*, § 107.14[2][c][iv][A], at 107-59 (Matthew Bender 3d ed. 2011) ("In the absence of fraudulent recitation of jurisdictional facts, there is no fraudulent joinder, even if the motive to join the nondiverse party is to defeat diversity jurisdiction, unless there clearly can be no recovery under state law on the alleged cause of action or on the facts as they exist when the motion to remand is heard."). In addition, the removing defendant is "entitled to present the facts showing the joinder to be fraudulent." *McCabe*, 811 F.2d at 1339.

Under the standard described by the Ninth Circuit in *McCabe*, the Pharmaceutical Defendants have not established by clear and convincing evidence that Plaintiffs have failed to state a cause of action against the Resident Defendants. In fact, the Pharmaceutical Defendants do not even address, let alone contest, in their notice of removal or in their opposition to Plaintiffs' motion for remand whether Plaintiffs have stated a cause of action against the Resident Defendants. The court has reviewed Plaintiffs' claims and, consistent with the conclusion reached by the MDL court in July 2010, finds that Plaintiffs have adequately pleaded viable claims. *See* Dkt. #25-1.

*2.    The Pharmaceutical Defendants' "Intent Test" for Fraudulent Joinder*

The Pharmaceutical Defendants argue that Plaintiffs fraudulently joined the Resident Defendants according to an alternative test for fraudulent joinder suggested by the

---

[8] Although thus far not considered in the Ninth Circuit, other courts have held that there may also be fraudulent joinder where there was "actual fraud in the pleading of jurisdictional facts." *See, e.g., Travis v. Irby*, 326 F.3d 644, 647 (5th Cir. 2003).

Pharmaceutical Defendants.  They suggest that removal is "proper where a plaintiff lacks a 'real intention to get a joint judgment' against the nondiverse defendants." Def.'s Notice at 8 (quoting *Chicago, Rock Island & Pac. Ry. Co. v. Schwyhart*, 227 U.S. 184, 194 (1913)). Under this test, the Pharmaceutical Defendants contend that the Plaintiffs' settlement with and dismissal of Selman's Medical Providers proves that Plaintiffs *never intended* to obtain a judgment against any of the Resident Defendants: "[Resident] Defendants were fraudulently joined because it is now apparent that plaintiffs never had an intent to pursue a claim against any Oregon defendant." Def.'s Notice at 7.

Under the Pharmaceutical Defendants' suggested "intent test," the determination of fraudulent joinder does not turn on whether a plaintiff adequately pleads a viable cause of action under applicable state law. Rather, the test focuses on a plaintiff's subjective intent in joining nondiverse defendants. *See* Def.'s Letter, Dkt. #31 at 3 ("where plaintiffs have no real intent to pursue an otherwise properly pled claim against the local defendant, the court may also find fraudulent joinder"). The proposed test shifts the focus of the inquiry from an examination of the factual and legal bases for a plaintiff's claims as pled to an examination of the plaintiff's motives. Such a test, however, is unsupported by existing case law, is contrary to the law stated in the Ninth Circuit, and would be unworkable in practice.

a.    An "intent test" lacks support in existing case law

The Pharmaceutical Defendants' suggested "intent test" is premised on a misunderstanding of the existing case law. The Pharmaceutical Defendants rely primarily on three cases. The first and principal case is *Chicago, Rock Island & Pacific Railway Co. v. Schwyhart*, 227 U.S. 184 (1913). In that case, the plaintiff sued an out-of-state railroad company and resident employees for personal injury in state court. The railroad removed the case, but it

was then returned to state court. The state court reached a verdict for the plaintiff against both the railroad and one resident employee. After the verdict, the railroad appealed the denial of removal, contending that the resident employees "were joined for the sole and fraudulent purpose of preventing removal." *Id.* at 193. The railroad identified two grounds to support its contention: first, that plaintiff failed to state a cause of action against the resident employee and second, that the resident employee lacked the means to satisfy a money judgment. *Id.*

The Supreme Court held that removal was unwarranted and, therefore, that the state court was the proper forum for this dispute. Addressing the railroad's first ground, the Supreme Court held that the state court's verdict proved that the plaintiff stated a cause of action against the resident employee. *Id.* at 193-94 ("[T]hat the plaintiff had such a cause of action in fact must be taken now to be established"). Turning to the railroad's second ground, the Court held that the plaintiff's motive for joining a party was irrelevant: The Supreme Court expressly stated that the "motive of plaintiff, taken by itself, does not affect the right to remove. If there is a joint liability, he has an absolute right to enforce it, whatever the reason that makes him wish to assert the right." *Id.* at 193. In other words, "the fact that the company is rich and [the resident employee] poor does not affect the case." *Id.*

The Supreme Court then explained that on "the question of removal we have not to consider more than whether there was a real intention to get a joint judgment, and whether there was a colorable ground for it shown as the record stood when the removal was denied." *Id.* at 194. It is this statement that the Pharmaceutical Defendants quote to support their "intent test." *See* Def.'s Notice at 8; Def.'s Opposition to Remand, Dkt. #24 ("Def.'s Opp.") at 7-8, 16-17. Defendants read the Supreme Court's statement to mean that, in order to avoid a charge of fraudulent joinder, a plaintiff must have a subjective intent to carry to judgment a case against a

resident defendant. *See* Def.'s Letter, Dkt. #31 at 1, 4. The Pharmaceutical Defendants, however, misread the Supreme Court's statement. If that were the Court's meaning, fraudulent joinder could be determined by dissecting the plaintiff's *motive*, which is an inquiry that the Court, just one paragraph earlier, expressly rejected.

The phrase "real intention to get a joint judgment" does not describe the plaintiff's *subjective* intent, but rather the *objective* fact of a well-stated claim against the resident defendant. This reading is supported by the second clause of the Court's statement, which is joined to first by the conjunction "and." The word "it" in the second clause ("whether there was a colorable ground for it shown as the record stood when the removal was denied"), refers back to the first clause ("whether there was a real intention to get a joint judgment"). This requires that there be a "colorable ground" for the "real intention to get a joint judgment" as "shown as the record stood when the removal was denied." It seems unlikely that the Court would ask whether, in order to avoid fraudulent joinder, there was a "colorable ground" for a plaintiff's subjective intent as shown in the record. Instead, the reference to "colorable ground" more sensibly refers to the plaintiff's claim. Understood in this fashion, the Court's statement means that a court must decide whether the plaintiff stated a claim against a resident defendant and whether there was a "colorable ground" for that claim. This interpretation, unlike Defendants', is entirely consistent with the Court's unequivocal statement that a plaintiff's motive is immaterial. It is also entirely consistent with the Ninth Circuit's test for fraudulent joinder, discussed below.

Two additional Supreme Court cases support this conclusion. In *Wecker v. Nat'l. Enameling & Stamping Co.*, 204 U.S. 176 (1907), the Supreme Court refused to remand a case where "the real purpose in joining [a resident defendant] was to prevent the exercise of the right of removal by the nonresident defendant[.]" *Id.* at 186. That language, standing by itself, might

seem to suggest that the Court inquired into the subjective intentions, purposes, and motives of the plaintiff to ask why the resident defendant was added to the case. To the contrary, however, the Supreme Court looked no further than the basis of the claims asserted against the resident defendant. The Supreme Court affirmed the lower court's refusal to remand because of "the apparent want of basis for the allegations of the petition" against the resident defendant. *Id.* at 185.

 *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921), is similar. The Supreme Court held that the plaintiff had fraudulently joined a resident defendant to defeat "the employer's right of removal." *Id.* at 98. The Court concluded that "it is apparent that the [resident defendant] was joined as a defendant without any purpose to prosecute the action in good faith as against him and with the purpose of fraudulently defeating the employer's right of removal." *Id.* at 98. The undisputed allegations supporting this conclusion, however, showed that the resident defendant "was not guilty of any joint negligence with the [non-resident defendant], was not present when the plaintiff's injuries were received, and did no act or deed which caused or contributed to such injuries." *Id.* at 94. Thus, although the Court spoke in language that suggested that it looked to the plaintiff's subjective intent, its decision was based on a showing that the plaintiff had no viable cause of action against the resident defendant. As in *Wecker*, the objective viability of plaintiff's claim against the resident defendant was the determinative factor.

 Although in both *Wecker* and *Wilson*, the Court employed language that seems to refer to the subjective intent of the plaintiffs, the Supreme Court's fraudulent joinder analysis in each case was based on an objective examination of the causes of action that were asserted against the resident defendants. In view of *Schwyhart*'s unequivocal admonition against consideration of a

plaintiff's motives, these cases create a test that rests solely on an objective examination of the plaintiff's stated cause of action, not on a dissection of the plaintiff's subjective intent.

Moreover, *Schwyhart* is not the only Supreme Court case that clearly states that the plaintiff's motive is immaterial to the question of whether there is fraudulent joinder. In *Illinois Central R.R. Co. v. Sheegog*, 215 U.S. 308 (1909), the defendant railroad sought removal by arguing that the two resident defendants had been joined "solely for the purpose of preventing removal." *Id.* at 308. The Court held that so long as the plaintiff had a valid claim against the resident defendants, the plaintiff's motive for joining them was irrelevant. "In the case of a tort which gives rise to a joint and several liability, the plaintiff has an absolute right to elect, and to sue the tortfeasors jointly if he sees fit, no matter what his motive, and therefore an allegation that the joinder of one of the defendants was fraudulent, without other ground for the charge than that its only purpose was to prevent removal, would be bad on its face." *Id.* at 316. The Court added that "no motive could make [the plaintiff's] choice a fraud." *Id.* at 318.  In addition, several other cases reiterate this holding. *See Chicago, Burlington & Quincy Ry. Co. v. Willard*, 220 U.S. 413, 427 (1911) (The plaintiff "may have preferred to have the case tried in the state court, just as [the defendant] preferred the Federal court. But these preferences or motives, not fraudulent or unnatural, were of no consequence."); *Chicago, Rock Island & Pac. Ry. Co. v. Dowell*, 229 U.S. 102, 114 (1913) ("If the plaintiff had a cause of action which was joint, and had elected to sue both tortfeasors in one action, his motive in doing so is of no importance."); *Chicago, Rock Island & Pac. Ry. Co. v. Whiteaker*, 239 U.S. 421, 424-25 (1915) (quoting *Schwyhart*'s discussion of motive).

The next case cited by the Pharmaceutical Defendants in support of their suggested "intent test" is a district court decision from the Third Circuit: *In re Diet Drugs*, 220 F. Supp. 2d

414 (E.D. Pa. 2002). In that case, the district court, acting as the transferee judge in multi-district litigation involving the diet drug known as fen-phen, denied three motions to remand filed by three separate sets of plaintiffs. For each motion, the court determined that remand was not appropriate because the plaintiffs had fraudulently joined certain defendants.

The court introduced its discussion of fraudulent joinder by stating the Third Circuit's standard: "Under our Court of Appeals decision . . . joinder is fraudulent 'where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant *or* no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.'" *Id.* at 419 (quoting *Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990)) (emphasis in original).[9] The italicized "*or*" signaled the district court's understanding that the Third Circuit's fraudulent joinder test had evolved into two disjunctive prongs: one prong addressed whether there was a "colorable ground" for plaintiff's claim, the other whether the plaintiff had a "real intention" to seek a joint judgment.[10]

The district court then discussed each motion in turn. Although it ultimately found fraudulent joinder prevented remand in all three cases, the court applied the "colorable ground" prong in the second and third cases. *See id.* at 422, 424. Thus, only the court's decision with respect to first motion was based solely on the "real intention" prong.

---

[9] This formulation is directly traceable to *Schwyhart*. The court in *In re Diet Drugs* quotes *Boyer*, in which the Third Circuit quotes verbatim from *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 29 (3d Cir.1985), which, in turn, quotes verbatim from *Goldberg v. CPC Int'l*, 495 F. Supp. 233, 239 (N.D. Cal. 1980). The *Goldberg* district court decision cites, in part, to *Schwyhart*. Although the *In re Diet Drugs* court used language originally developed by the *Goldberg* court to launch an assessment of the plaintiffs' motives, the *Goldberg* court was clear that motive is "immaterial": "It is immaterial that plaintiff may have been motivated by a purpose to defeat removal." *Id.*

[10] These prongs, as originally set forth in *Schwyhart*, were conjunctive, not disjunctive. As in a game of telephone, *Schwyhart*'s "and" became, nearly a century later, *In re Diet Drug*'s "or." No court has explained why the change from "and" to "or" was a good idea.

The first motion, however, did not involve nondiverse defendants. Instead, the court described evidence showing that the plaintiffs' counsel had entered into a scheme with the counsel for several ancillary defendants such that those defendants would decline to consent to removal. In return, plaintiffs would eventually dismiss the claims against those defendants. *Id.* at 421-22. Upon finding evidence of this scheme, the district court held that the principal defendants, who opposed remand, had "met their heavy burden of persuasion that plaintiffs have no real intention in good faith to seek a judgment against the [ancillary] defendants[.]" *Id.* at 422. Accordingly, the district court concluded that "the lack of consent of the [ancillary] defendants will be ignored in determining the propriety of remand." *Id.*

The district court's reasoning in *In re Diet Drugs* is not transferrable here. That court was considering whether to recognize some defendants' refusal to consent to removal, not whether to disregard the citizenship of a nondiverse defendant. In fact, the ancillary defendants in *Diet Drugs* were diverse, *see id.* at 417-18, and so, on removal, the district court had the requisite complete diversity jurisdiction. Thus, although the *Diet Drugs* court discussed plaintiffs' subjective intentions in addressing the "consent issue," in none of the three remand motions it considered did it conclude that a nondiverse defendant was fraudulently joined based solely on the plaintiffs' intentions.

The last case cited by the Pharmaceutical Defendants in their briefing in support of its suggested "intent test" is *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284 (11th Cir. 1998). Defendants contend that *Triggs* holds that "removal [is] proper where plaintiffs have no 'real intention to get a joint judgment' against" the resident defendant. Def.'s Notice at 8 (quoting *Triggs*, 154 F.3d at 1291). Although the court in *Triggs* quotes *Schwyhart* 's "real intention" language, it expressly rejected the contention that a plaintiff's "'bad faith' is enough to warrant a

finding that [the resident defendant] was fraudulently joined." *Id.* at 1290-91. In other words, *Triggs* stands against the very proposition that Defendants attribute to it.[11]

### b.    An "intent test" is contrary to the standard in the Ninth Circuit

The Ninth Circuit has never strayed from the straightforward test set forth in *McCabe*. *See, e.g., Morris*, 236 F.3d at 1067-68 (fraudulent joinder exists when plaintiff's complaint fails to "state a claim" against the nondiverse defendant and the failure was "obvious"); *Ritchey*, 139 F.3d at 1320 (finding fraudulent joinder where cause of action against resident defendants was clearly barred by statute of limitations); *United Computer Systems, Inc. v. AT&T Corp.*, 298 F.3d 756, 761-62 (9th Cir. 2002) (finding fraudulent joinder where plaintiff's claims against resident defendant was frivolous); *Mercado v. Allstate Insurance Co.*, 340 F.3d 824, 826 (9th Cir. 2003) (finding fraudulent joinder where there was no basis in California law for claim against

---

[11] The Pharmaceutical Defendants later cited two additional Fifth Circuit district court cases in a supplemental letter. Dkt. #31. The first is *Joe v. Minn. Life Ins. Co.*, 257 F. Supp. 2d 845 (S.D. Miss. 2003). In that case, the district court found that the resident defendant's "intended omission of a" statute of limitations defense in his answer was "sufficient evidence that this resident defendant has been fraudulently joined solely for the purpose of depriving this Court of jurisdiction." *Id.* at 849. Defendants are correct that the district court focused on the plaintiff's "good faith intention of prosecuting her claim against [the] resident defendants." *Id.* at 850. The district court relied principally on *In re Diet Drugs* to reach its decision. The second case is *Moreaux v. State Farm Mutual Automobile Ins. Co.*, No. 09-396, 2009 WL 1559761 (W.D. La. June 3, 2009). In that case, the district court found that the resident defendant's failure to raise the defense that he had not been served, as well as his representation in another matter by the plaintiff's attorney, "points to the conclusion that defendant Thomas is more aligned with the plaintiff than with the diverse defendants." *Id.* at *5.

These two cases are distinguishable. In both cases, the courts found that the resident defendant "is more aligned with the plaintiff than with the diverse defendants." *Id.*; *see also Joe*, 257 F. Supp. 2d at 849 (the resident "defendant . . . is more aligned with the with the plaintiff than with the [non-resident] defendants"). The Pharmaceutical Defendants have not argued that this is the situation here. Moreover, when faced with such a situation, the court may realign the parties to preserve diversity. *See, e.g., Standard Oil Co. v. Perkins*, 347 F.2d 379, 382 (9th Cir. 1965) (noting that district court realigned parties to preserve diversity after removal). Such a realignment was not sought in the present case, and nor would it be appropriate. Further, as explained above, Supreme Court precedent does not compel application of an intent test and, as explained below, that is not the test in the Ninth Circuit.

nondiverse defendant). Without a foundation in this circuit's law, and absent compelling reasons to do so, this court will not adopt a new test for fraudulent joinder.

Moreover, other circuits have stated that a plaintiff's motive has no bearing on a fraudulent joinder analysis. *See Jerome-Duncan, Inc. v. Auto-By-Tel, L.L.C.*, 176 F.3d 904, 907 (6th Cir. 1999) (motive "is immaterial to our determination regarding fraudulent joinder"); *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 577 (5th Cir. 2004) (test for fraudulent joinder eschews the personal motive of plaintiff); *see also* 16 *Moore's Federal Practice* § 107.14[2][c][iv][B], at 107-67 (Matthew Bender 3d ed. 2011) ("[T]he motive of the plaintiff in joining the challenged party is immaterial to the determination of whether the plaintiff has a state law cause of action against that party").

### c.    Pragmatic concerns militate against employing an "intent test"

Finally, the "intent test" suggested by the Pharmaceutical Defendants would permit a federal court to hear and render a judgment on the merits of a case that lacked complete diversity and, hence, lacked subject matter jurisdiction. If fraudulent joinder actually were to turn on a court's conclusion regarding a plaintiff's intention in joining a resident (nondiverse) defendant rather than on the viability of the claim asserted against that defendant, a federal court could disregard the citizenship of a resident defendant for purposes of diversity jurisdiction, deny a plaintiff's motion to remand, and ultimately render a final judgment on the merits of the case, including a judgment on the merits against the resident (nondiverse) defendant.

If the plaintiff in such a case ultimately obtained judgments in federal court against both the resident and the non-resident defendants, those judgments could be dismissed on appeal *sua sponte* by a court of appeals for lack of subject matter jurisdiction. *See, e.g., Valdez v. Allstate Ins. Co.*, 372 F.3d 1115 (9th Cir. 2004) (*sua sponte* remanding case to district court for

determination whether the amount in controversy requirement was satisfied); *see also* Fed. R.

Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the

court must dismiss the action."). The possibility of such a scenario illustrates why the viability of

the plaintiff's claim against the resident defendant must remain the foundation of any sound

fraudulent joinder analysis.

Moreover, other problematic consequences could emerge from a fraudulent joinder test

that allows inquiry into the subjective intent and motivations of plaintiff (or, more likely,

plaintiff's counsel). Under an "intent test" for fraudulent joinder, a defendant could possibly

obtain discovery against a plaintiff and a plaintiff's counsel regarding their subjective intentions

and motivations for naming a particular resident (nondiverse) defendant against whom that

plaintiff has adequately stated a plausible claim. This would invite potentially expensive and

intrusive collateral discovery and discovery disputes, especially where the inquiry would seek to

invade the thought-processes of the plaintiff's counsel. In addition, such an "intent test" could

potentially flood the federal courts with removal petitions and requests for discovery into the

intentions and motivations of a plaintiff's counsel.

### 3. *The Pharmaceutical Defendants Have Failed to Show Fraudulent Joinder*

The court does not find any basis for the Pharmaceutical Defendants' suggested "intent

test" for fraudulent joinder either in the case law of the Supreme Court or in the case law of any

other circuit. The suggested "intent test" also is contrary to the test stated by the Ninth Circuit.

Further, an "intent test" would be unworkable and ill-advised. Thus, the court rejects the

Pharmaceutical Defendants' suggested "intent test."

The court has also evaluated Plaintiffs' claims against the Resident Defendants, and there

appears to be no serious challenge by the Pharmaceutical Defendants to the conclusion that

Plaintiffs' claims against the Resident Defendants are well stated and plausible. In this regard, it is notable that these claims have survived in state court all the way through the stage of final trial preparation. Accordingly, under the Ninth Circuit's test as articulated in *McCabe*, the court concludes that the Resident Defendants, including those remaining in this case, were not fraudulently joined.

**C.    Fraudulent or Egregious Misjoinder**

The Pharmaceutical Defendants also argue, in the alternative, that remand of the entire case is not required. They propose that "the claims of [Plaintiff] Selman should remain in this [c]ourt and the claims of [P]laintiffs Tope and Narz can be severed and remanded to state court." Def.'s Notice at 8. The Pharmaceutical Defendants assert that this court has authority to do this pursuant to the fraudulent *mis*joinder doctrine.

The fraudulent misjoinder doctrine was first recognized in the Eleventh Circuit. *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996), *abrogated on other grounds by*, *Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11th Cir. 2000). Fraudulent misjoinder occurs where a plaintiff adds "nondiverse plaintiffs or defendants in a state-court action even though the plaintiffs' or defendants' claims do not arise out of the same transaction or occurrence or series of transactions or occurrences as would be required under [Fed. R. Civ. P.] Rule 20." 16 *Moore's Federal Practice*, § 107.14[2][c][iv][A.1], at 107-61 (Matthew Bender 3d ed. 2011). In that event, the court may sever the claims of the nondiverse plaintiffs and defendants and remand those to state court and retain jurisdiction over the claims involving diverse parties. *See Triggs*, 154 F.3d at 1289 (noting that fraudulent misjoinder doctrine permits "severing claims where the claims are separable and have no logical connection"). It is not sufficient, however, for a plaintiff to have merely misjoined unrelated claims; the misjoinder must be "egregious." *Tappscott*, 77

F.3d at 1360; *see also In re Prempro Products Liability Litigation*, 591 F.3d 613, 623 (8th Cir. 2010) ("The majority of courts demand more than simply the presence of nondiverse, misjoined parties, but rather a showing that the misjoinder reflects an egregious or bad faith intent on the part of the plaintiffs to thwart removal." (internal quotation marks and citation omitted)).

The Ninth Circuit has not yet recognized fraudulent misjoinder, and the circuit's district courts are split on the question of whether to do so. *Compare Osborn v. Metropolitan Life Ins. Co.*, 341 F. Supp. 2d 1123, 1126-27 (E.D. Cal. 2004) (noting that the Ninth Circuit has not addressed fraudulent misjoinder and declining to apply it) *with Greene v. Wyeth*, 344 F. Supp. 2d 674, 684-85 (D. Nev. 2004) (applying fraudulent misjoinder); *see also* 16 *Moore's Federal Practice*, § 107.14[2][c][iv][A.1], at 107-61-62 (Matthew Bender 3d ed. 2011) ("District court opinions on fraudulent misjoinder have been mixed, with some applying the doctrine, and others rejecting it as unsupported by Supreme Court authority, contrary to the narrow construction properly given to removal statutes, or unnecessarily confusing.") (footnotes omitted). In the pending case, this court need not decide whether to apply the fraudulent misjoinder doctrine because the Pharmaceutical Defendants have not established that Plaintiffs fraudulently or egregiously misjoined their claims. Indeed, the Pharmaceutical Defendants have not shown that Plaintiffs have even misjoined their claims, let alone fraudulently or egregiously done so.

Under Rule 20(a)(1), litigants may join in one action as plaintiffs if "they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all plaintiffs will arise in the action." In this circuit, Rule 20 "is to be construed liberally in order to promote trial convenience and to expedite the final determination of disputes, thereby preventing multiple lawsuits." *League to Save Lake Tahoe v. Tahoe Regional*

*Planning Agency*, 558 F.2d 914, 917 (9th Cir. 1977). In addition, even if one were to evaluate misjoinder of parties under the state court rules, the result would not be different. Rule 28A of the Oregon Rules of Civil Procedures is virtually identical to Rule 20(a)(1) of the Federal Rules of Civil Procedure.

In light of these standards, the court concludes that Plaintiffs' claims against all Defendants were properly joined in this action. The original complaint involved an alleged series of transactions between the Pharmaceutical Defendants (who manufactured and marketed hormone replacement therapy drugs), the Resident Defendants (who prescribed those drugs), and Plaintiffs (who developed cancer after taking those drugs and allege a causal relationship). Each Plaintiff's claim arises from the same series of transactions involving the Pharmaceutical Defendants: the manufacture and marketing of the hormone replacement therapy drugs at issue. In addition, a common question of law or fact is likely to arise. For example, the causal link, if any, between the hormone replacement therapy drugs and Plaintiffs' cancers, is likely to introduce a question common to each Plaintiff's claim. *See In re Prempro Products Liability Litigation*, 591 F.3d at 623 (finding a "palpable connection between the plaintiffs' claims against the manufacturers [of hormone replacement therapy drugs] as they all relate to similar drugs and injuries and the manufacturers' knowledge of the risks of [hormone replacement therapy] drugs").

In addition, the state court has already considered and refused to sever Plaintiffs' claims. *See* Def.'s Opp. at 17-18 n.23. Given that the Plaintiffs' claims against all Defendants seem to be properly joined, this court sees no reason to reassess what the state court has already decided. At a minimum, the state court's decision and this court's own analysis each establish that Plaintiffs'

claims are not misjoined, let alone fraudulently or egregiously misjoined. Thus, there is no need to sever any claims or parties.

The Pharmaceutical Defendants also argue that the fraudulent misjoinder doctrine turns "upon a showing of 'bad faith.'" Def.'s Opp. at 17. As such, they argue that "the prior decision by the state court to deny Plaintiffs' request for severance . . . is not dispositive" because even if the claims were properly joined, the Plaintiffs' acted in bad faith. Def.'s Opp. at 17-18 n.23 (emphasis omitted). The court disagrees. Unlike the analysis of fraudulent joinder, the analysis of fraudulent or egregious misjoinder, at least in those circuits that accept that doctrine, may consider the plaintiff's motive and intent. *See In re Prempro Products Liability Litigation*, 591 F.3d at 623. The Pharmaceutical Defendants must, however, first establish that Plaintiffs' claims are misjoined before intent becomes a factor in determining whether such misjoinder was fraudulent or egregious. *See id.* (considering misjoinder before intent). If Plaintiffs' claims were properly joined, the court has no reason to examine the Plaintiffs' intentions.

Because the remaining Resident Defendants were neither fraudulently joined nor egregiously or fraudulently misjoined, their citizenship is relevant to the diversity analysis. This leads to the conclusion that this case lacks complete diversity and, therefore, cannot be removed under § 1441. Accordingly, Plaintiffs' motion to remand this action back to the Multnomah County Circuit Court is GRANTED.

**D.    Pharmaceutical Defendants' Request to Take Discovery in Aid of Jurisdiction**

The Pharmaceutical Defendants have requested leave to take discovery in aid of jurisdiction "to demonstrate the fraud in the naming of Plaintiff Selman's and the other Plaintiffs' physicians in this action, and application of an equitable exception to the one-year limit." Def.'s Opp. at 15. Such discovery, however, is not necessary.

Page 26 – OPINION AND ORDER

The court has not rejected the Pharmaceutical Defendants' removal petition as untimely under the one-year limit set forth in 28 U.S.C. § 1446(b). Thus, there is no need for the Pharmaceutical Defendants to take any discovery to support the application of an equitable exception to that time limit.

In addition, the court has rejected the Pharmaceutical Defendants' suggested "intent test" for fraudulent joinder, for the reasons stated above. The court has also held that there is no misjoinder of the Resident Defendants, also for the reasons stated above, which obviates any need to inquire whether any misjoinder was fraudulent or egregious. Thus, there is no need for the Pharmaceutical Defendants to take any discovery concerning the intentions or motivations of any Plaintiff or of Plaintiffs' counsel.

Accordingly, the Pharmaceutical Defendants' request to take discovery in aid of jurisdiction is DENIED.

## IV.    CONCLUSION

For the reasons stated above, Plaintiffs' emergency motion to remand (Dkt. #5) is GRANTED, and the Pharmaceutical Defendants' request for leave to take discovery in aid of jurisdiction is DENIED.

IT IS SO ORDERED.

Dated this 16th day of December, 2011.


/s/ Michael H. Simon_____
Michael H. Simon
United States District Judge